JMH:KCM
F. #2022R00694

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>A BLUE IPHONE CELL PHONE, CURRENTLY LOCATED IN THE CUSTODY OF THE UNITED STATES POSTAL INSPECTION SERVICE IN BROOKLYN, NEW YORK<br><br>IN THE EASTERN DISTRICT OF NEW YORK | **APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE**<br><br>Case No. 22-MJ-01165 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Cliford Spell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am a Detective with the New York Police Department ("NYPD") and a Task Force Officer currently assigned to the United States Postal Inspection Service ("USPIS"). As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 371,

conspiracy to commit mail theft,  as well as theft or receipt of stolen mail, in violation of

18 U.S.C. § 1708, and theft of mail matter by an officer or employee, in violation of

18 U.S.C. § 1709 (collectively, the "Subject Offenses").

       3.     I have been a Task Force Officer since 2018 and have been assigned to

the NYPD Financial Crimes Task Force, Special Frauds Task Force since 2016.  I have served

with the NYPD for approximately 23 years and have been a Detective since approximately 2009.

During my work as a Task Force Officer, I have participated in numerous fraud investigations

involving the use and theft of United States mail.

       4.     I have received training and assisted in cases involving financial crimes,

computer crimes, communications-related crimes, identity theft and money laundering.  I have

also received training in areas of mail fraud, mail theft, credit card fraud and threats or assaults

made against USPS employees.  I have received formal instruction from United States Postal

Inspectors, and other federal, state, and local law enforcement agents who have done extensive

work in investigating criminal and civil misconduct.

       5.     I am familiar with the facts and circumstances set forth below from my

participation in the investigation; my review of the investigative file, including criminal history

records; and from reports of other law enforcement officers involved in this investigation.  Over

the course of this mail theft investigation, I also routinely reviewed cellular devices and

accompanying records.  The USPIS is a federal agency charged with investigating violations of

criminal and civil statutes relating to the United States Postal Service ("USPS").

       6.     The facts in this affidavit come from my personal observations, my

training and experience, and information obtained from other agents and witnesses.  This

affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.      The property to be searched is a Blue Apple IPhone Device (the "Device"), which is further described in Attachment A.  The Device is currently located at a USPIS facility in Brooklyn, New York.  The Device is depicted below.



8.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9.      On October 19, 2022, law enforcement executed arrest warrants for Angelina Garcia ("GARCIA") and Devin Mercado ("MERCADO") pursuant to Magistrate

Docket No. 22-MJ-1117.  GARCIA and MERCADO were arraigned on charges of conspiracy to

commit mail theft, in violation of the Subject Offenses.  The complaint is incorporated by

reference and included in this application as Exhibit 1.

> 10.     At the time she was charged, GARCIA was employed as a Postal Manager
with the USPS at the Fort Hamilton Postal Station, located in Brooklyn, New York.

> 11.     The Device is currently stored in the lawful possession of the USPIS.  On
October 19, 2022, while executing the arrest warrants associated with the attached complaint,

law enforcement officers accompanied GARCIA, into her bedroom to observe while GARCIA

got dressed.  While in GARCIA's bedroom, the law enforcement officers observed the Device on

GARCIA's nightstand in plain view.  When the officers asked GARCIA to bring identification

and any other items she may need with her, GARCIA walked to her nightstand, picked up the

Device, but then put it back down on her nightstand.  The officers, having knowledge of this

investigation and the facts in the attached complaint, then seized the Device, because there was

probable cause to conclude that the Device belonged to GARCIA and that it will contain

evidence of the Subject Offenses, including conversations between GARCIA and MERCADO,

as set forth in more detail in the complaint. See Exhibit 1.

> 12.     In my training and experience, I know that the Device has been stored in a
manner in which its contents are, to the extent material to this investigation, in substantially the

same state as they were when the Device first came into the possession of the USPIS.

> 13.     As detailed in Exhibit 1, since approximately February 2022 through to
present, the USPIS and New York City Police Department ("NYPD") have been investigating

the theft of mail parcels containing checks from the Fort Hamilton, New York U.S. Postal

Station, in zip code 11209.  Many of the stolen checks had been "washed" such that the payee information had been changed and the checks subsequently cashed against the account that issued the check.

14.     Based upon my training, experience, and the facts of this investigation, as set forth herein, I believe that GARCIA, in her capacity as a Postal Station Manager, has been removing various pieces of mail believed to contain checks and other financial instruments, including Postal Money Orders ("PMOs"), providing those items to MERCADO, who in turn "washes" the financial instrument, posts the "washed" and/or stolen instrument on his Telegram channel, and mails the fraudulent and/or stolen instruments via Priority Express mail.

15.     Review of MERCADO and GARCIA's phone records provided by AT&T revealed hundreds of communications between GARCIA and MERCADO from in or about and between February 2022 and September 2022.  For example, as detailed in the attached complaint (see Exhibit 1 at ¶ 8), MERCADO and GARCIA communicated with one another several times on September 10, 2022, in furtherance of their conspiracy.

16.     Based on my training and experience, co-conspirators like GARCIA and MERCADO, who are engaged in a conspiracy to steal mail use phones such as the Device to remain in contact with co-conspirators, share information and discuss payments, among other reasons.  In my training and experience, co-conspirators like GARCIA and MERCADO who are engaged in a conspiracy to steal mail also use phones, such as the Device, to discuss their crimes even after they have been completed and to plan future crimes.

17.     Based on the foregoing, and set forth in more detail in Exhibit 1, there is probable cause to believe that the Device contains evidence of violations of 18 U.S.C. § 371,

1708 and 1709.  I believe therefore that there is probable cause to conclude that the Device will provide information on how the defendants GARCIA and MERCADO conspired to steal mail containing financial instruments, "wash," and then sell the stolen items for a profit.

## TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

6

b.  Digital camera:  A digital camera is a camera that records pictures as digital
    picture files, rather than by using photographic film.  Digital cameras use a
    variety of fixed and removable storage media to store their recorded images.
    Images can usually be retrieved by connecting the camera to a computer or by
    connecting the removable storage medium to a separate reader.  Removable
    storage media include various types of flash memory cards or miniature hard
    drives.  Most digital cameras also include a screen for viewing the stored images.
    This storage media can contain any digital data, including data unrelated to
    photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a
    handheld digital storage device designed primarily to store and play audio, video,
    or photographic files.  However, a portable media player can also store other
    digital data.  Some portable media players can use removable storage media.
    Removable storage media include various types of flash memory cards or
    miniature hard drives.  This removable storage media can also store any digital
    data.  Depending on the model, a portable media player may have the ability to
    store very large amounts of electronic data and may offer additional features such
    as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its
    current location.  It often contains records the locations where it has been.  Some
    GPS navigation devices can give a user driving or walking directions to another
    location.  These devices can contain records of the addresses or locations involved

7

in such navigation.  The Global Positioning System (generally abbreviated
"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite
contains an extremely accurate clock.  Each satellite repeatedly transmits by radio
a mathematical representation of the current time, combined with a special
sequence of numbers.  These signals are sent by radio, using specifications that
are publicly available.  A GPS antenna on Earth can receive those signals.  When
a GPS antenna receives signals from at least four satellites, a computer connected
to that antenna can mathematically calculate the antenna's latitude, longitude, and
sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used
for storing data (such as names, addresses, appointments or notes) and utilizing
computer programs.  Some PDAs also function as wireless communication
devices and are used to access the Internet and send and receive e-mail.  PDAs
usually include a memory card or other removable storage media for storing data
and a keyboard and/or touch screen for entering data.  Removable storage media
include various types of flash memory cards or miniature hard drives.  This
removable storage media can store any digital data.  Most PDAs run computer
software, giving them many of the same capabilities as personal computers.  For
example, PDA users can work with word-processing documents, spreadsheets,
and presentations.  PDAs may also include global positioning system ("GPS")
technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed

via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

21.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

22.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

23.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

24.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

25.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer

10

behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

26.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.     Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.     Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

29.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.


Respectfully submitted,

*/s/ Cliford Spell*

Cliford Spell
Task Force Officer/Detective
U. S. Postal Inspection Service/NYPD


Subscribed and sworn to by reliable telephonic
means on October 28, 2022:

*Taryn A. Merkl*

HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

The property to be searched is a Blue Apple IPhone Device ("Device") currently located at a USPIS facility in Brooklyn, New York, and is depicted below.



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 371, 1708, and 1709, and involve ANGELINA GARCIA and DEVIN MERCADO since approximately February 2022, including:

a.  evidence of the identity and location of co-conspirators and victims;

b.  evidence of communications with co-conspirators, including telephone logs, text messages, messages sent through encrypted applications and emails;

c.  evidence of meeting with co-conspirators, including GPS and other location data;

d.  evidence regarding preparation for the Subject Offenses, including research or communications related to the acquisition of personal identifying information or related to victims or potential victims;

e.  evidence of property obtained as part of the scheme, including the property and merchandise purchased and any receipts for that property and merchandise

f.  any information related to sources of stolen mail, financial instruments, and/or fraudulent financial instruments (including names, addresses, phone numbers, or any other identifying information);

g.  all financial accounts, including bank accounts, credit cards, debit cards, BitCoin, CoinBase, CashApp and Venmo accounts, and any other financial records.

h.  evidence of disposition of the proceeds of the Subject Offenses, including cryptocurrency and electronic payments;

i.  any photos, videos, screenshots, audio recordings that contain evidence of the Subject Offenses;

j. evidence concerning the location of other evidence, including additional devices, used in furtherance of the Subject Offenses; and

k. evidence concerning an effort to evade law enforcement detection of the Subject Offenses.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol addresses including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigative agency may deliver a complete copy

of the seized or copied electronic data to the custody and control of attorneys for the government

and their support staff for their independent review.

**EXHIBIT 1**

4

JMH:KCM
F.# 2022R00694

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ANGELINA GARCIA and
DEVIN MERCADO,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

A F F I D A V I T   A N D
C O M P L A I N T   I N   S U P P O R T
O F   A N   A P P L I C A T I O N   F O R
A R R E S T   W A R R A N T S

(T. 18, U.S.C. §§ 371, 1708 and 1709)

No. 22-MJ-01117

EASTERN DISTRICT OF NEW YORK, SS:

    Louis Maiocco, being duly sworn, deposes and states that he is a Postal Inspector

with the United States Postal Inspection Service, duly appointed according to law and acting as

such.

## CONSPIRACY TO COMMIT MAIL THEFT

    In or about and between February 2022 and September 2022, within the Eastern

District of New York and elsewhere, the defendants ANGELINA GARCIA and DEVIN

MERCADO, together with others, did knowingly and willfully conspire to commit an offense

against the United States, to wit: mail theft, in violation of Title 18, United States Code, Section

1708.

    (Title 18, United States Code, Section 371)

## THEFT OR RECEIPT OF STOLEN MAIL

    In or about and between February 2022 and September 2022, within the Eastern

District of New York and elsewhere, the defendants ANGELINA GARCIA and DEVIN

2

MERCADO, together with others, did knowingly and intentionally steal, take, and abstract from

and out of one or more mail, post office, post station, letter box, mail receptacle, mail route, and

other authorized depositories for mail matter, one or more letters, postal cards, packages, bags,

and mail, and one or more articles and things therein, to wit: checks that had been conveyed to a

U.S. Postal Station for delivery via U.S. mail.

(Title 18, United States Code, Section 1708)

<u>THEFT OF MAIL MATTER BY OFFICER OR EMPLOYEE</u>

In or about and between February 2022 and September 2022, within the Eastern

District of New York and elsewhere, the defendant ANGELINA GARCIA, being a Postal

Service officer or employee, stole mail entrusted to her or which came into her possession,

intended to be mailed or forwarded through delivery from any post office or station, to wit:

checks that had been conveyed to a U.S. Postal Station for delivery via U.S. mail.

(Title 18, United States Code, Section 1709)

The source of your deponent's information and the grounds for his belief are as

follows:[1]

1.      I am a Postal Inspector with the United States Postal Inspection Service

("USPIS") and have been involved in the investigation of numerous cases involving mail theft.  I

am familiar with the facts and circumstances set forth below from my participation in the

investigation; from my review of the investigative file; and from reports of other law-

enforcement officers involved in the investigation.

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2.      The USPIS is currently investigating the theft of mail parcels containing checks from a Fort Hamilton, New York U.S. Postal Station in zip code 11209, within the Eastern District of New York ("Fort Hamilton Post Office").  Those stolen checks had been "washed" such that the payee information had been changed and the checks subsequently cashed against the account that issued the check.

3.      Based upon my training, experience, and the facts of this investigation, as set forth in more detail below, I believe that ANGELINA GARCIA ("GARCIA"), in her capacity as a Postal Station Manager, has been removing various pieces of mail believed to contain checks and other financial instruments, providing those items to DEVIN MERCADO ("MERCADO"), who in turn "washes" said checks, posts those items and other checks stolen from the Fort Hamilton Post Office, for sale on his Telegram channel, and then mails the fraudulent and stolen checks via Priority Express mail.

4.      Law enforcement learned that at least two of the stolen checks had been posted on a public Telegram channel[2] named "DaChefGodfather Glass & Grub Official Channel" by a user with the account name "DaChefGodfather."  Based upon our investigation, I believe that this account belongs to MERCADO.  The channel appears to be a marketplace for MERCADO to sell stolen checks, and messages from MERCADO to the channel include price lists and instructions on making payments using e-payment applications such as CashApp, Zelle, and Bitcoin ("BTC").  MERCADO charges different rates for stolen checks sent only as images, shipped, or washed and shipped. Screenshots of the price lists and terms posted by MERCADO are depicted below.  MERCADO has also routinely advertised stolen checks by posting photos

---

[2]      I understand that Telegram is an encrypted chat communication app and channels are a means for a user account known as an "Admin" or Administrator to broadcast content including photos, videos, or messages to a group of subscribers.

of checks from payor accounts with addresses in the 11209 Zip Code, where the Fort Hamilton

Post Office is located.



5.      I took the above-captioned screenshots after viewing them on

MERCADO's public Telegram page.  Based upon my training, experience, and knowledge of

this investigation, I believe that MERCADO is using coded language to describe what he is

selling, for example "grub" is used to describe checks, either regular or Treasury.  Furthermore, I

believe that when MERCADO lists his "Glass Prices of 2022" he is describing the payment for

specific condition of the checks sold, i.e., "just the image," "shipped," or "shipped and washed." MERCADO specifically indicates that he will not accept a Zelle payment for an amount less than $1,200.00, and for lesser amounts he requests "BTC" (Bitcoin), or payments made through the mobile application CashApp.  Finally, MERCADO details a specific "refund policy," indicating he will only give a full refund if the buyer can show proof that the washed check was not accepted or "slappin."  MERCADO also provides specific instructions if buyers have issues with items requiring a PIN or if the account upon which the check is drawn had insufficient funds.

6. Based upon the information visible on the Priority Express envelopes posted by MERCADO, I know that USPS labels were printed from a third-party mailing service account registered in MERCADO's name with an address consistent with what I know to be MERCADO's residence. Via this account, MERCADO shipped approximately 200 Priority Express mailings since March 2022.  Some of the labels for these mailings include the sender's name as "Da Chef" and lists a sender address as a gas station that I know to be near MERCADO's residence.

7. Over the course of this investigation, members of law enforcement obtained phone records from AT&T which revealed the following: a phone number ending in 7822 was registered to MERCADO at his residence (the "MERCADO Phone"), and a phone number ending in 6944 was registered to GARCIA, at the address I identified from USPS records as GARCIA's residence (the "GARCIA Phone").

8. On or about September 10, 2022, at approximately 11:50 a.m., GARCIA, via the GARCIA Phone, called MERCADO via the MERCADO Phone.  USPIS records reflect

that GARCIA was at work as a clerk at the Fort Hamilton Postal Office from 9:30 a.m. to approximately 4:16 p.m. that day.

9.      Shortly after calling GARCIA, MERCADO created a Pitney Bowes shipping label from an account registered to MERCADO ("SEPTEMBER 10 PACKAGE"). Approximately 7 minutes after creating the shipping label, MERCADO departed his residence, located in Ozone Park, New York.

10.     MERCADO again called GARCIA shortly after leaving his residence and at approximately 12:24 p.m., MERCADO's vehicle, a blue BMW X5 which I have observed him operating several times throughout this investigation, was detected on the westbound Belt Parkway via a New York City Police Department ("NYPD") License Plate Reader.

11.     Approximately five minutes later, video surveillance recovered from a business nearby depicted MERCADO's BMW driving east on 5th Avenue towards the Fort Hamilton Post Office.  A short time later, MERCADO'S BMW was captured on video surveillance driving west on 5th Avenue, in the direction of the Belt Parkway, leaving the area.

12.     Minutes later, MERCADO posted a message stating "All Orders Have Been Shipped," with a "rocket ship" emoji, followed closely by a posting of a photograph of what appears to be a USPS bin on the front passenger seat of a vehicle, filled with what appears to be dozens of envelopes, to his public Telegram channel, with the caption, "Let's Start Getting Ready FOR NEXT WEEK THOOO" with four "rocket ship" emojis.  A screenshot of this post and caption appears below.



13.     Later that afternoon, MERCADO posted another photograph to his

Telegram channel, which features a blue check with number "045987" in the upper-right hand

corner, in the amount of $84,084.99, with the caption "Gon BE A GREAT WEEK" followed by

the rocket ship emoji.  MERCADO posted additional comments to the above-described

photograph, first "This'll be sold for 2K and better I'll accept nothing less ! From a fresh high

bal slip," and second "Limited Time Only All Slip Images Are 150$ ! Need to clean up

Inventory for next week[.]"  A screenshot of this post and caption appears below.



14.     USPS records reflect that at 12:35 p.m., GARCIA scanned the

SEPTEMBER 10 PACKAGE, the shipping label for which was created by MERCADO, see ¶ 9,

above.  GARCIA then called MERCADO at approximately 1:51 p.m.

15.     There is also reason to conclude that MERCADO and GARCIA are

conspiring to steal other items of mail, such as Postal Money Orders ("PMOs").

16.     Law enforcement later received a civilian complaint detailing the

following: on September 10, 2022, at approximately 10:41 a.m., the civilian ("VICTIM 1")

bought two USPS PMOs at the Fort Hamilton Post Office, one ending in 1486 in the amount of

$1,000.00 and another ending in 1497 in the amount of $700.00 ("SEPTEMBER 10 PMOs").  I

am informed by VICTIM 1 that VICTIM 1 purchased the SEPTEMBER 10 PMOs for the purpose of paying rent, and that after purchasing said orders, VICTIM 1 placed them in an envelope and immediately put the envelope into the mail slot inside the Fort Hamilton Post Office.

17.     I am informed by VICTIM 1 that he later received a notification from his landlord that VICTIM 1's rent payment had not been received.  VICTIM 1 then requested a Postal Money Order Inquiry and received images of the SEPTEMBER 10 PMOs, which reflected that the "pay to" section on both SEPTEMBER 10 PMOs had been altered to read "Devin Mercado," in "Ozone Park, NY 11417."  Furthermore, the inquiry provided images of the back of the SEPTEMBER 10 PMOs, both bearing MERCADO's signature and listing MERCADO's New York State Driver's License ID Number, as well as the last four digits of MERCADO's Citibank account number with the expiration date of 04/27.

18.     I ran the SEPTEMBER 10 PMO in the USPS system and said records reflect that GARCIA processed the transaction where VICTIM 1 purchased both SEPTEMBER 10 PMOs.  USPS records further reflect that MERCADO negotiated the SEPTEMBER 10 PMOs at the Ozone Park Postal Station on September 12, 2022.

19.     The USPIS obtained Zelle records for both defendants.  A review of these records revealed that MERCADO sent GARCIA a payment of approximately $2,000.00 in February 2022.  Zelle is an electronic payment application which permits users to send and receive money electronically.

20.     Furthermore, based upon my training, experience, and knowledge of this investigation, there is probable cause to believe that GARCIA is assisting MERCADO from inside the Fort Hamilton Post Office.  I believe that GARCIA, as a postal manager, removes

legitimate pieces of mail containing checks from the Fort Hamilton Post Office, communicates

with MERCADO via telephone and provides the mailings to him. I believe that MERCADO

accepts this mail from GARCIA, removes the legitimate checks, washes them, and reposts the

fraudulent and stolen checks for sale on his Telegram channel. I believe that MERCADO then

mails the fraudulent checks with the assistance of GARCIA in her capacity as a Post Office

Manager.

21.     It is respectfully requested that this Court issue an order sealing, until

further order of the Court, all papers submitted in support of this application, including the

Affidavit and Arrest Warrants. I believe that sealing these documents is necessary because they

are relevant to an ongoing criminal investigation, which is not public at this time. Premature

disclosure of the contents of the Affidavit and the related documents may have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness

and could result in a risk of flight by the defendants.

WHEREFORE, your deponent respectfully requests that the defendants

ANGELINA GARCIA and DEVIN MERCADO may be dealt with according to law.

*/s/ Louis Maiocco*
_____
Louis Maiocco
Postal Inspector
United States Postal Inspection Service

Sworn to before me by telephone this
17th day of October, 2022

*Marcia M. Henry*
_____
THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK